IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN D. MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 20 C 2118 |
| ) | |
| MARTIN O'MALLEY, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Kevin D. Miller filed this lawsuit against the acting commissioner of the Social Security Administration (SSA), his former employer, asserting discrimination and retaliation claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, e-3. He contends that the SSA discriminated against him because of his sex when it denied his requests to telework and that the SSA retaliated against him in violation of Title VII by denying him telework and paid court leave to attend an initial status hearing and deposition in connection with a prior lawsuit he filed against the SSA. The SSA has moved for summary judgment regarding all of Miller's claims. For the following reasons, the Court grants summary judgment in favor of the SSA on Miller's retaliation claims regarding denial of his court leave requests (Counts 5 and 6) but denies the SSA's motion for summary judgment on Miller's claims for sex discrimination and retaliation regarding denial of his telework requests (Counts 1, 2, 3, 4).

**Background**

The factual record the Court considers when ruling on a motion for summary judgment is framed by the parties' Local Rule 56.1 statements and responses, although the Court retains discretion to "consider other materials in the record" where appropriate. Fed. R. Civ. P. 56(c)(3). Except as otherwise noted, the following represents the undisputed facts as presented in the parties' Local Rule 56.1 statements.

Miller is a former SSA employee who began working as a paralegal specialist at the SSA's Orland Park hearing office in 2014. Due to performance issues, Miller was placed on a Performance Assistance Plan (PA Plan) starting on October 26, 2015. After the PA Plan was extended, Miller was placed on an Opportunity to Perform Successfully Plan (OPS Plan), which lasted from February 1, 2016 to May 31, 2016. At Miller's performance appraisal on October 31, 2016, he received a "Level 1," or "unsuccessful," rating in the critical element of "achieves business results." On January 27, 2017, the SSA demoted Miller to the position of senior case technician, a decision he appealed to the Merit System Protection Board (MSPB) the following month. After the MSPB ruled against him, Miller appealed the MSPB's decision by filing a lawsuit in this District alleging race and disability-based discrimination and retaliation.

While Miller was on a PA Plan and an OPS Plan, his telework privileges were suspended pursuant to the National Agreement between Miller's union, the American Federation of Government Employees, and the SSA. The relevant portion of the National Agreement states, "To be eligible to participate in Telework, an employee must meet all of the following conditions: . . . A. Not be under a Performance Assistance (PA) or Opportunity to Perform Successfully (OPS) plan . . .". Pl.'s Resp. to Def.'s Stat. of

Facts ¶¶ 7, 9, 12; Def's. L.R. 56.1 Stat. ¶ 7.  The National Agreement also provides that an employee who receives an unsuccessful performance rating is ineligible for telework.  Pl.'s Resp. to Def.'s Stat. of Facts ¶ 19; Def.'s L.R. 56.1 Stat. ¶ 14 (listing eligibility requirements for telework and including that the employee must "[m]aintain at least an acceptable level of performance (e.g., successful contribution rating).").  Due to Miller's unsuccessful rating in the critical element for his position, "achieves business results," on October 31, 2016, Miller was ineligible for telework.  Miller nonetheless applied for telework twice in 2017.  The SSA denied both applications.  Miller bases his claims in this case on these two denials.

**A.     Miller's telework requests**

Miller submitted a request to telework three days per week on August 22, 2017.  On September 28, 2017, Ron Gryga, the director of the Orland Park hearing office, denied this telework request (Count 2).  In denying Miller's request, Gryga stated that Miller "is not eligible to telework this cycle because of prior telework termination," and referred to article 41, section 10 of the National Agreement, which states that "[a]n employee, who has been removed from the Telework Program may reapply for Telework at the first application cycle following a 1-year termination period," which for Miller would have been February 2018.  Pl.'s Ex. 10 at 14; Def.'s Resp. to Pl.'s Add'l Facts ¶ 12.  Miller contends that Gryga's denial of his telework request was retaliatory given that he applied for telework in August 2017, soon after Gryga testified in Miller's MSPB proceeding in July 2017, in which Miller challenged his demotion.

On October 5, 2017, Miller filed a grievance regarding Gryga's denial of his telework request.  Jerome Taylor, Miller's supervisor, denied this grievance on the

3

ground that Miller's most recent performance appraisal from October 2016 reflected that he had not maintained an acceptable level of performance, rendering him ineligible for telework under article 41 of the National Agreement.

On October 25, 2017, after he received a Level 3, or successful, rating in his performance appraisal, Miller submitted a second request to telework, also for three days per week. This request was also denied, this time by Taylor (Count 4). Taylor cited article 41, section 10 of the National Agreement, which states that "[a]n employee who has been removed from the Telework Program may reapply for Telework at the first application cycle following a 1-year termination period." Pl.'s Ex. 14 at 7; Def.'s Resp. to Pl.'s Add'l Facts ¶ 17. Taylor explained that Miller would not be eligible to telework until February 2018, the first application cycle after the one-year period that began in October 2016, when he received a Level 1 (unsuccessful) rating. Miller contends that Taylor's denial of his telework application was retaliatory, because it followed Miller's grievance in which he accused Gryga and Taylor of discriminating against him on the basis of sex.

Although the record is not particularly clear, the Court infers that the grievance Miller believes led to this denial of telework was the grievance he filed on October 5, 2017, over Gryga's denial of the August 2017 telework request. Taylor denied the grievance on October 24, 2017.

Miller filed a third request for telework in February 2018, which Taylor approved. Miller began teleworking in April 2018.

**B.     Comparators**

Miller alleges that the SSA discriminated against him due to his sex when it

ground that Miller's most recent performance appraisal from October 2016 reflected that he had not maintained an acceptable level of performance, rendering him ineligible for telework under article 41 of the National Agreement.

On October 25, 2017, after he received a Level 3, or successful, rating in his performance appraisal, Miller submitted a second request to telework, also for three days per week. This request was also denied, this time by Taylor (Count 4). Taylor cited article 41, section 10 of the National Agreement, which states that "[a]n employee who has been removed from the Telework Program may reapply for Telework at the first application cycle following a 1-year termination period." Pl.'s Ex. 14 at 7; Def.'s Resp. to Pl.'s Add'l Facts ¶ 17. Taylor explained that Miller would not be eligible to telework until February 2018, the first application cycle after the one-year period that began in October 2016, when he received a Level 1 (unsuccessful) rating. Miller contends that Taylor's denial of his telework application was retaliatory, because it followed Miller's grievance in which he accused Gryga and Taylor of discriminating against him on the basis of sex.

Although the record is not particularly clear, the Court infers that the grievance Miller believes led to this denial of telework was the grievance he filed on October 5, 2017, over Gryga's denial of the August 2017 telework request. Taylor denied the grievance on October 24, 2017.

Miller filed a third request for telework in February 2018, which Taylor approved. Miller began teleworking in April 2018.

**B.     Comparators**

Miller alleges that the SSA discriminated against him due to his sex when it

denied his telework requests in August 2017 and October 2017. To support his allegations, Miller argues that his coworkers Donna Cole-Horsley and LaShawn Doss were similarly demoted from the role of paralegal specialist to senior case technician and had similarly unfavorable performance reviews but were granted telework outside of the February or August application cycles.

Cole-Horsley received an unsuccessful rating in September 2014 and a successful rating in October 2015. The parties dispute exactly when Cole-Horsley began teleworking. Miller asserts that Cole-Horsley began teleworking in July or August 2015, before her October 2015 successful rating, based on a declaration from Cole-Horsley. The SSA states that Cole-Horsley began teleworking in October 2015 at the earliest, citing to an email from her supervisor, Ann Doorhy, and Cole-Horsley's Telework Program Agreement, which was dated October 27, 2015 and effective as of the week of November 23, 2015. Doorhy was the supervisor who approved Cole-Horsley's telework request.

Regarding Doss, the parties dispute whether Doss was ever rated unsuccessful. The SSA asserts that Doss never received a Level 1 or unsuccessful rating, citing to a declaration from Gryga stating as much. Miller disputes this and cites to Doss's August 4, 2016 demotion decision, which states, "you did not maintain successful performance in the critical elements of *Achieves Business Results* and *Demonstrates Job Knowledge*. Failure to maintain successful performance in either one of these critical elements means that your performance was not successful." Pl.'s Resp. to Def.'s Stat. of Facts ¶ 63; *contra* Def's. L.R. 56.1 Stat. ¶ 60-67. Neither party has produced Doss's performance assessment form from 2016. Nonetheless, it is undisputed that Taylor

5

approved Doss's request to telework, which she submitted on December 22, 2016. Upon her demotion in August 2016, Doss had been terminated from telework. Taylor therefore approved her application off-cycle—in other words, Taylor did not wait until February to approve the request—and less than one year after Doss was terminated from telework, in contrast to Taylor's denial of Miller's October 2017 application for those reasons. In a signed declaration, Taylor says he approved Doss's off cycle telework request because he viewed her as having more experience than Miller and because Doss only had issues with timeliness, whereas Miller had issues with accuracy and timeliness.[1]

**C.      Paid court leave denial**

Miller also asserts retaliation claims based on the SSA's denial of his two requests to use paid court leave. First, he requested paid court leave to attend the initial status hearing in his previous lawsuit against the SSA for race and disability discrimination (Count 5). Taylor denied Miller's request, basing his decision on the SSA's personnel policy. Miller filed a grievance asserting that the denial of his request for court leave to attend the status hearing was unlawful and retaliatory. Miller now concedes, however, that it "may have been [] proper" for Taylor to deny his request for court leave to attend the initial status hearing. Def.'s Ex. B at 23:10-16.

Miller again requested paid court leave to attend his July 24, 2018 deposition in his earlier lawsuit against the SSA (Count 6). Taylor also denied this request and wrote to Miller, "Since you are bringing the action, I believe you are expected to use your

---

[1] Miller objects to this statement of fact on the grounds that it is hearsay and not rooted in first-hand knowledge. The Court overrules Miller's objection and will consider this as evidence of Taylor's state of mind, in other words, what he believed at the relevant time.

personal leave." Pl.'s Resp. to Def.'s Stat. of Facts ¶¶ 36-37. Per the SSA's personnel policy manual, court leave is "not appropriate" when "the suit is filed by the employee," and instead, "[a]nnual leave, credit hours, compensatory time or leave without pay may be granted for such absences." *Id.* ¶ 38. The manual further states, "[w]hen employees file suit against the Agency, the time spent in preparation for the trial . . . does not qualify for court leave." *Id.* Miller, however, felt that Taylor was wrong to deny his request for paid court leave because the deposition was taken "on the agency's behest." *Id.* ¶ 39. Miller says that to attend his deposition, he was forced to charge leave against his annual leave balance because he had accrued no credit hours or compensatory time off. The SSA disputes that Miller "was forced to charge leave against his annual leave balance." Def.'s Resp. to Pl.'s Stat. of Additional Facts ¶ 37. Rather, it maintains that Miller *chose* to do this, citing to a statement in Miller's declaration that he "was forced to choose between charging leave against my annual leave balance or taking leave without pay to attend the deposition. I chose to charge leave . . ." *Id.*; Miller Decl., Ex. 1 at ¶ 15. Miller contends in Count 6 that the SSA denied his request for court leave in retaliation for his grievances and his earlier lawsuit.

## Discussion

The SSA has moved for summary judgment on all of Miller's claims. A court must grant a summary judgment motion "if the movant shows that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears

the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party is required to identify material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013).

This Court notes that, in responding to the SSA's motion for summary judgment, Miller does not defend his claim of retaliation for denial of court leave to attend the status hearing (Count 5). Pl.'s Mem. In Opp'n to D's Mot. for Summ. J. Miller, therefore, has abandoned Count 5. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008) ("[Plaintiff] failed to defend her claim against [Defendant's] arguments. She therefore abandoned the claim.") The Court also notes that Miller effectively conceded during his deposition that Taylor properly denied his court leave request for the initial status hearing. Def.'s Ex. B at 23:10-16. The SSA is therefore entitled to summary judgment on Count 5.

**A.    Adverse action**

Judge Maldonado, to whom this case was previously assigned, questioned whether the SSA's allegedly unlawful actions constituted actionable adverse action, and Miller submitted a supplemental memorandum at the judge's direction. This Court determines that SSA's denial of Miller's telework requests, which he submitted in August and October 2017, are adverse actions, both in the context of Miller's sex discrimination and retaliation claims. SSA's denial of Miller's court leave requests in July 2018 to attend his deposition hearing, however, does not qualify as an adverse action.

### 1. Adverse action for sex discrimination claims

In *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), the Supreme Court made it clear that to pursue a claim of discrimination under Title VII, a plaintiff need only show "some harm respecting an identifiable term or condition of employment." *Id.* at 354–55. The Court overruled decisions from a number of circuits, including the Seventh, that imposed a materiality threshold in this regard. *See id.* at 353-56 & n.1.

Miller's claimed loss of $3,000 from the denial of telework counts as a "disadvantageous" change in his employment terms with the SSA. *Muldrow*, 601 U.S. at 347. A reasonable factfinder could conclude that Miller's inability to telework transformed the terms and conditions of his work and left him "worse off" than he would have been if didn't have to commute into the office every day. *Id.* at 359.

### 2. Adverse action for retaliation claims

The threshold for adverse action in the retaliation context is arguably lower than for discrimination claims: It requires only that "the action was "serious enough to "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." *Muldrow*, 601 U.S. at 348. That said, the action "must rise above trivial harms, such as petty slights or minor annoyances that often take place at work and that all employees experience." *Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 912 (7th Cir. 2022) The test is fact-based and dependent on the particular context of a case. *Id.* at 912; *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 54-55 (2006).

A reasonable juror could find that the loss of telework would dissuade a reasonable worker from engaging in activity protected by Title VII. *See Walker v. Maryland Dep't of Info. & Tech.*, No. CV CCB-20-219, 2020 WL 6393435, at *6 (D. Md.

Nov. 2, 2020) (denying motion to dismiss Title VII retaliation claim, finding that "At this stage, the court accepts that it is plausible that the denial of telework is a materially adverse employment action capable of deterring a reasonable employee from making a charge of discrimination."). The ability to telework changes the structure of an employee's workday. By way of example, a worker who may have personal circumstances that depend on his ability to telework certainly could be dissuaded from filing a grievance if he feared losing telework privileges as a result. The same would be true for a worker who cannot bear the cost of commuting on a daily basis.

Regarding the SSA's denial of Miller's request for paid court leave to attend a deposition in his earlier lawsuit against the agency, the Court concludes that no reasonable factfinder could determine this was actionable adverse action. Specifically, it is difficult to see how the prospect of an employee having to take time off work to pursue a lawsuit he chose to initiate possibly could deter a reasonable employee from filing or pursuing the lawsuit. Perhaps more importantly, in Miller's case he did not actually have to take time off without pay. Rather, as Miller's submission in response to Judge Maldonado's order indicates, the denial of paid court leave basically put him to the choice of having to use part of his paid annual leave or to take unpaid leave; Miller chose to charge paid leave against his leave balance. *See* Pl.'s Brief Pursuant to Minute Entry [Dkt. 55] at 4; Pl.'s Stat. of Add'l Facts ¶ 37; Pl.'s Mem. In Opp'n to D's Mot. for Summ. J. at 14. In short, the SSA did not deny Miller any pay at all. Under the circumstances, no reasonable factfinder could determine Miller suffered actionable adverse action. *See, e.g., Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 301–02 (7th Cir. 2004) (loss of pay for two days did not constitute actionable adverse action for a

10

retaliation claim).

**B.      Sex discrimination claims (Counts 2 and 4)**

The Court next addresses whether Miller can sustain his sex discrimination claims.

A plaintiff can sustain a claim of discrimination in multiple ways.  The Seventh Circuit has stated that all evidence in a discrimination case "belongs in a single pile and must be evaluated as a whole."  *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016), and the only question a court need ask is whether "the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination." *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).  But *Ortiz* simply offers a method of assessing discrimination cases; it "did not displace the burden-shifting analysis established in *McDonnell Douglas*." *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017).  Because both Miller and the SSA have argued the summary judgment motion via the *McDonnell Douglas* method, this Court will also evaluate their claims under that standard.  *Id.* at 500.

On summary judgment, to establish a prima facie case under the *McDonnell Douglas* test, a plaintiff must provide evidence that would allow a reasonable juror to find that the plaintiff was a member of a  "(1) a protected class; (2) performed reasonably on the job in accord with their employer['s] legitimate expectations; (3) [was] subjected to an adverse employment action despite their reasonable performance; and (4) similarly situated employees outside of the protected class were treated more favorably by the employer." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887,

895 (7th Cir. 2018).² If the plaintiff establishes a prima facie case, the employer must provide a legitimate, non-discriminatory reason for the adverse action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the employer does this, the burden shifts back to the plaintiff to present evidence that would permit a reasonable jury to find that the employer's justification is pretextual. *See David*, 846 F.3d at 225.

Here, there is no dispute that Miller is part of a protected class (male) and alleges gender discrimination in this suit. The Court assesses the remaining elements in the discussion that follows.

1. **Similarly situated**

Miller's chance of success on the SSA's summary judgment motion turns on whether he can identify a similarly situated employee who was not subject to the adverse action that he experienced. The similarly situated inquiry is "usually a question for the fact-finder," and summary judgment is appropriate only when "no reasonable fact-finder could find that plaintiffs have met their burden on the issue." *Srail v. Village of Lisle*, 588 F.3d 940, 945 (7th Cir. 2009). Though a plaintiff should identify a comparator similar enough to allow for a meaningful comparison, the inquiry is fact-based and context dependent, and it does not require a mechanical "one-to-one

---

²The Court notes that, in this action, Miller presents a so-called "reverse discrimination" argument because he does not claim to be part of a traditionally disfavored group but rather is a member of a majority group. For such plaintiffs, there is an enhanced proof requirement. *See Dunlevy v. Langfelder*, 52 F.4th 349, 353 (7th Cir. 2022) (stating that "Because this is a reverse discrimination case . . . the first prong of the *McDonnell* test cannot be used. . . . Rather, Dunlevy must provide evidence of "background circumstances ... show[ing] an inference that the employer has reason or inclination to discriminate invidiously against whites or evidence that there is something 'fishy' about the facts at hand."). The SSA has not argued the case this way, however, so it has forfeited the point.

mapping between employees." *Coleman v. Donahoe*, 667 F.3d 835, 846–47 (7th Cir. 2012).

Miller has pointed to two SSA employees that he contends are similarly situated to him: Donna Cole-Horsley and LaShawn Doss. Specifically, Miller argues that the SSA approved these employees' telework requests even though they were ineligible, just as the SSA contends Miller was.

### a. Donna Cole-Horsley

Miller argues that the SSA permitted Cole-Horsley, who, like Miller, was demoted from Paralegal Specialist to Senior Case Technician, to telework even though she was ineligible to do so. The Court need not delve deeply into the similarly situated inquiry regarding Cole-Horsley, because there is no genuine factual dispute regarding her ineligibility to telework when SSA approved her request.

It is undisputed that under the SSA's policies, based on the National Agreement, an employee who has received an unsuccessful performance rating is ineligible to telework until they receive a successful performance rating. Both Miller and SSA agree that Cole-Horsley received an unsuccessful performance rating in September 2014 and received a successful rating in October 2015. The parties disagree, however, on when Cole-Horsley was permitted to begin teleworking. Miller argues that Cole-Horsley was permitted to telework before she had received a successful rating in October 2015. In support of this contention, Miller points to a declaration from Cole-Horsley, who states that "[t]o the best of my recollection, I requested and began to telework one day a week in July or August 2015." Pl.'s Ex. 4. For its part, the SSA has produced Cole-Horsley's telework program agreement from October 2015, which states that it is effective for the

13

week of November 23, 2015. Def.'s Ex. V. The SSA has also offered a November 3, 2015 e-mail to Cole-Horsley from her supervisor, who stated that "I believe you told me last week was your first day of telework." Def.'s Ex. W. This contemporaneous documentary evidence reflects that Cole-Horsley began teleworking, at the earliest, in late October 2015, which would have been after she received a successful rating. Under the circumstances, Cole-Horsley's "best of my recollection" declaration is insufficient to give rise to a *genuine* factual dispute. In short, no reasonable factfinder would find Cole-Horsley similarly situated to Miller.

      b.    **LeShawn Doss**

By contrast, a reasonable factfinder could find that LeShawn Doss is similarly situated to Doss. Both parties admit that Jerome Taylor supervised Doss and Miller. Both employees were in the same paygrade. Both were demoted from Paralegal Specialist to Senior Case Technician. Doss was demoted on August 4, 2016. Both parties agree that Taylor permitted Doss to begin teleworking in January 2017, nine months before October 2017, when she received a successful performance rating.

The parties dispute whether Doss ever received an unsuccessful rating that would have made her ineligible to telework during January 2017. The National Agreement states that an employee is ineligible for telework if the employee fails to meet certain conditions, including maintaining "at least an acceptable level of performance (e.g., successful contribution rating)." Def.'s Ex. E at 249. SSA argues that this means that an employee is ineligible for telework only if the employee formally receives an unsuccessful rating. Miller argues that the National Agreement condition means that a successful contribution rating is *one* way an employee may fail to maintain

14

"an acceptable level of performance" and that the condition may be satisfied through other means as well. The Court notes that the National Agreement uses "e.g.," before mentioning a "successful contribution rating," which indicates that an unsuccessful rating is one example, but not the only way the condition may be satisfied. Miller also points out that the demotion letter to Doss stated, "You did not maintain successful performance. . . . Failure to maintain successful performance…means that your performance was not successful. " Sziler Memo, Ex. T at 1-2.

Based on this evidence, the Court concludes that a reasonable jury could find that Doss fell under the "unsuccessful performance" condition of the National Agreement and was thus ineligible to telework at the time the SSA approved her telework request.

Regarding Gryga's denial of Miller's August 2017 telework request, the SSA argues that Miller and Doss are not similarly situated because they had different supervisors at that time (in contrast to October 2017, when Taylor supervised both Miller and Doss). Though this is a factor to be considered, it is not dispositive, particularly when supervisors are applying standardized company policies. *See e.g., Donahoe*, 667 F.3d at 846–47; *Ellis v. United Parcel Service*, 523 F.3d 823, 826 (7th Cir. 2008); *Little v. Illinois Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004). Here the evidence tends to show that Gryga and Taylor both applied the written telework policies set out in the National Agreement. As Miller notes, one of the purposes of having written policies is to ensure they will be applied consistently. Thus the fact that Doss and Miller had different supervisors in August 2018 is not dispositive.

In sum, the Court concludes that a reasonable jury could find that Miller satisfies

the prima facie case requirement of a similarly situated employee who was treated better than he was.

### 3. Legitimate expectations

Steps two and four of the *McDonnell Douglas* test (employee performed according to the employer's legitimate expectations; similarly situated employee treated better) merge when the plaintiff "produces evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate manner." *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002). That is the case here. Miller has pointed to evidence sufficient to allow a reasonable jury to infer that the SSA applied its legitimate employment expectations, as memorialized in the National Agreement, differently when addressing Miller and Doss's telework requests.

### 4. Legitimate non-discriminatory reason and pretext

As indicated earlier, once a plaintiff establishes a prima facie case, the employer may provide a legitimate, non-discriminatory reason for its allegedly discriminatory action. *McDonnell Douglas Corp.*, 411 U.S. at 802. The plaintiff may then present evidence to show that this justification is pretextual for the employer's discriminatory reason. *Singmuongthong v. Bowen*, 77 F.4th 503, 508 (7th Cir. 2023). By pointing to a similarly situated employee who was treated more favorably, the plaintiff raises an inference that the employer's justification is pretextual. *Martino v. W. & S. Fin. Grp.*, 715 F.3d 195, 202 (7th Cir. 2013); *see also Donahoe,* 667 F.3d at 841 (7th Cir. 2012).

The SSA contends it was following the agency's policies when rejecting Miller's telework request. But in this case, as the Court has discussed, Miller has pointed to evidence sufficient to raise a reasonable inference that the policies were applied more

16

strictly to him than to at least one other similarly situated employee. A reasonable factfinder therefore could conclude that the SSA's proffered justification is pretextual.

For these reasons, the Court denies the SSA's motion for summary judgment regarding sex discrimination claims arising from the two telework denials (Counts 2 and 4).

**C.     Retaliation claims**

In his remaining retaliation claims (Counts 1 and 3), Miller alleges two instances of retaliation. First, he points to Gryga's denial of his first telework request submitted in August 2017 after Gryga testified at a July 2017 hearing related to Miller's appeal of his demotion before the MSPB. Second, Miller points to Taylor's denial of his second telework request submitted in October 2017 after he filed a grievance that named Taylor.

A plaintiff may prove retaliation under Title VII via the direct or indirect method. *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 537 (7th Cir. 2013). The Court need not address the direct method, because Miller's remaining retaliation claims survive summary judgment under the indirect method.

To prove retaliation through the indirect method, an employee must present "proof that (1) the employee engaged in statutorily protected activity; (2) [the employee] was meeting the employer's legitimate expectations; (3) [the employee] suffered an adverse employment action; and (4) [the employee] was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Id*.

The Court overrules the SSA's contention that Miller has failed to point to a similarly situated employee who was treated more favorably. As explained earlier, a

17

reasonable factfinder could find that Doss is similarly situated to Miller (except for the fact that she did not submit a complaint or grievance or otherwise engage in protected activity) but was treated more favorably.

To justify denying Miller's October 2017 telework request, Taylor told Miller to reapply in February 2018, the month when he would become eligible for telework, that is, the first application cycle following the one-year period from when he got an unsuccessful rating. As discussed earlier, however, Miller points to evidence that Taylor granted Doss's off-cycle telework application less than one year after she had been terminated from the telework program. A reasonable jury could find that, under the National Agreement, Doss was not eligible to telework at that point.

The SSA also contends that Doss is not similarly situated by noting that, unlike Miller, Doss did not receive an unsuccessful performance rating. But as discussed earlier, this basis for this contention is genuinely disputed: Miller points to language in Doss's demotion decision letter that she "did not maintain successful performance." Def.'s Ex. T. This dispute cannot appropriately be resolved on summary judgment.

For these reasons, the SSA is not entitled to summary judgment on Miller's retaliation claims regarding the denials of telework.

## Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary judgment [dkt. no. 32] on plaintiff's retaliation claims arising from the denial of his court leave requests Counts 5 and 6 but otherwise denies defendant's motion. Counts 1, 2, 3, and 4 remain for trial. The Court sets the case for a telephonic status hearing on October 2, 2024 at 9:10 a.m. to set a trial date and discuss the possibility of settlement.

The following call-in number will be used: 650-479-3207, access code 2305-915-8729.

Date: September 19, 2024

                                                                          _____
                                                                             MATTHEW F. KENNELLY
                                                                             United States District Judge